**Gregory ROWLAND Plaintiff,**

v.

**GIFTCERTIFICATES.COM, INC. Defendant.**

No. 02 CIV. 0696(LBS).

United States District Court, S.D. New York.

April 1, 2002.

Ivan M. Diamond, Law Offices of Ivan M. Diamond, Bronx, for Plaintiff.

Michael J. Lebowich, Proskauer Rose LLP, New York, for Defendant.

## OPINION and ORDER

SAND, District Judge.

On October 12, 2001, Plaintiff Gregory Rowland ("Rowland") brought suit in New York State Supreme Court, Bronx County, against Defendant Giftcerticates.com ("Giftcertificates"), a Delaware corporation. On January 29, 2002, Defendant filed a notice of removal seeking to bring this action to federal district court. In this motion to remand, Plaintiff claims that the notice of removal was filed more than thirty days after Defendant was served with the summons and complaint, thus violating the thirty-day time frame in which a notice of removal must be filed. *See* 28 U.S.C. § 1446(b). We deny Plaintiff's motion to remand.

### Facts

On March 15, 2001, Plaintiff, wishing to pursue claims against Defendant for alleged employment discrimination, false imprisonment, negligence, and defamation, ascertained from the New York Secretary of State ("Secretary of State") that Giftcertificates was an active foreign corporation authorized to do business in New York State with a service of process address given as 470 7th Avenue, 6th Floor, New York, N.Y. 10018. *See* Ivan Diamond Affidavit ¶ 4 ("Diamond Aff."); Complaint ¶¶ 30, 66, 78, 85 99. On March 19, 2001, Plaintiff's counsel sent an acknowledgment of representation letter to Defendant at this address through certified mail return receipt requested. *Id.* On March 20, 2001, the return card was returned with the signature of "M. Vancol." *Id.* On March 22, 2001, Defendant's counsel responded to Plaintiff's March 19 letter and stated that they were unaware of any litigation between Rowland and Giftcertificates. *Id.* at ¶ 7.

On October 12, 2001, Plaintiff's counsel reconfirmed with the Secretary of State that Defendant was a foreign corporation in good standing with the same service of process address. *Id.* at ¶ 8. That same day, Plaintiff commenced this action in New York State Supreme Court, Bronx County. *Id.* Plaintiff's summons and complaint was served on the Secretary of State pursuant to the New York Business Corporation Law § 306 ("Bus.Corp.Law"), and the required fee was paid. *Id.* at ¶ 9. Upon receiving no answer to the complaint by December 7, 2001, Plaintiff's counsel personally mailed a copy of the summons and complaint to Defendant's service of process address and to Defendant's counsel. *Id.* at ¶ 10. Defendant received this second summons and complaint on January 9, 2002 at its Seattle, Washington office. *See* Defendant's Memorandum 2. De-

fendant states that it had moved from its New York headquarters on June 30, 2001, and its mail was thereafter forwarded to its Seattle office. *See* Michael Ahern Affidavit ¶ 4, 5 ("Ahern Aff.").

On January 31, 2002, Plaintiff received a notice of removal dated January 29, 2002. *Id.* at ¶ 11. On February 7, 2002, Plaintiff's counsel requested from the Secretary of State any documents that were filed by Defendant. On February 20, 2002, Plaintiff's counsel asked the Secretary of State for any documents relating to service of process on Defendant in this matter. With respect to the service of process of Defendant, the Secretary of State produced a document stating that the "envelope containing the process was returned by the Postal Service with the following notation: Forwarding Order Expired." Diamond Aff., Ex. C, at 7. There are no submissions from the parties that suggest Defendant received the November 11, 2001 mailing from the Secretary of State.

Plaintiff now claims that Defendant did not file a notice of removal within the thirty days required by 28 U.S.C. § 1446(b).

## Discussion

For a foreign corporation to be authorized in New York, it must apply for such authority and designate "the secretary of state as its agent upon whom process

against it may be served and the post office address within or without this state to which the secretary of state shall mail a copy of any process against it served upon him." Bus. Corp. Law § 1304. Defendant in fact applied for authority in New York pursuant to Bus. Corp. Law § 1304 on October 9, 1997, was granted such authority, and designated the Secretary of State as the agent of the corporation for purposes of service of process. *See* Diamond Aff., Ex. F.

■ Section 28 U.S.C. 1446(b) states:

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has been filed in court and is not required to be served on defendant, whichever period is shorter.

28 U.S.C. § 1446(b).[1] The critical issue here is whether Defendant filed a notice of removal within thirty days of "receipt" of the initial pleading through "service." *Id.* Plaintiff claims that Defendant was served on November 11, 2001 when the Secretary of State mailed a copy of process to Defendant.[2] *See* Diamond Aff., Ex. C. By con-

---

1. Issues concerning removal jurisdiction are determined by federal law and procedure. *See Medina v. Wal–Mart Stores, Inc.,* 945 F.Supp. 519, 520 (W.D.N.Y.1996).

2. At oral argument, Plaintiff initially argued that Defendant was served on November 1, 2001 when the Secretary of State was served with the summons and complaint. *See* March 18, 2002 Transcript at 3 ("Transcript"). However, Plaintiff later conceded that "the November 1st service of process on the Secretary of State did not start anything." *Id.* at 13. Plaintiff then adopted November 11, 2001, the day the Secretary of State mailed

the summons and complaint to Defendant, as the date when "constructive receipt of that summons and complaint was made." *Id.* at 14. However, as will be discussed, 28 U.S.C. § 1446(b) requires that the notice of removal be filed within thirty days of *receipt* of the summons and complaint. In actuality, then, if we were to follow Plaintiff's theory, November 11, 2001 would most likely not be the date that would have started the thirty-day period in which to remove. In theory, Defendant would have received the mailing shortly after November 11. However, the distinction between "Nov. 11" and "Nov. 11 or soon there-

trast, Defendant claims that it was not served until January 9, 2002 when it received the complaint at its offices in Seattle, Washington. *See* Diamond Aff., Ex. H. If Defendant was served on November 11, 2001 or shortly thereafter, the January 29, 2002 notice of removal would be untimely and the case should be remanded to state court. If Defendant was served on January 9, 2002, the notice of removal would be timely and the motion to remand should be denied.

Defendant will prevail if (a) Defendant's failure to receive the November 11, 2001 service of process was not the result of some dereliction on its part, such as a failure to provide for the forwarding of its mail by the Postal Service, (b) Defendant did not violate a statutory duty or obligation that prevented its timely receipt of the November 11, 2001 service of process, and (c) Defendant did not receive the summons and complaint under a theory of constructive receipt.

## A. Dereliction with Respect to the Forwarding Order

■ The first issue is whether the Defendant was derelict in some manner with regard to having its mail forwarded from its New York address to its Seattle office. If Defendant was derelict in failing to file the proper forwarding order with the Postal Service, then Plaintiff may be able to argue persuasively that service of process was effected on November 11, 2001 or soon thereafter even though Defendant did not receive the service of process until January 9, 2002.

■ In general, this court has found that the "heavy weight of authority is to the effect that the time for removal, in cases in which service is made on a statutory agent, runs from *receipt* of the pleading by the defendant rather than by the statutory agent." *Cygielman v. Cunard Line Ltd.*, 890 F.Supp. 305, 307 (S.D.N.Y. 1995) (citing cases) (emphasis added); *Medina*, 945 F.Supp. at 520 ("That the New York Business Corporation Law recognizes service of process as being complete in civil actions brought against a corporation authorized to do business in the state once the Secretary of State has been served is not relevant to [the] question whether defendant's notice of removal is timely."). Moreover, the "defendant's right to a federal forum ought not to depend upon the rapidity and accuracy with which statutory agents inform their principals of the commencement of litigation against them." *Cygielman*, 890 F.Supp. at 307. *See also Cancel v. Challenge Printing Company*, 1996 WL 701022 (S.D.N.Y. 1996) (finding that the New York Secretary of State is considered a statutory agent for service of process purposes). If service of process is lost in the mail or is returned to the sender as a result of the Postal Service's error, the intended recipient is not and should not be held responsible for the legal consequences, such as the operation of the thirty days in which a notice of removal must be filed, as if delivery and receipt had actually occurred at an earlier date. No case that we have found in this circuit has stated otherwise, nor do we see any compelling reason why such a rule should be adopted.

Here, the parties' submissions indicate that Defendant did not receive the summons and complaint mailed by the Secre-

---

after" is irrelevant to the outcome of this case because the dispute is not over whether Defendant should have removed the case on December 11 or several days thereafter—the dispute is over whether service took place in November or January. Thus, when analyzing the Plaintiff's theory of the case, we will more accurately refer to "Nov. 11 or soon thereafter" as the relevant time for service of process.

tary of State on November 11, 2001 because of some error outside of Defendant's control. Defendant states that it "has not maintained any office, facility, or employees in New York State since June 30, 2001." *See* Ahern Aff. ¶. Since June 30, 2001, all the mail at the 470 7th Avenue address has been forwarded to the Defendant's address in Seattle, Washington.[3] Ahern Aff. ¶ 5. Defendant argues that the service of process should have been forwarded to the Seattle office, but instead the Postal Service returned the service to the Secretary of State with the notation: "Forwarding Order Expired." *See* Diamond Aff., Ex. C. We know that at least some mail was being forwarded because the second summons and complaint, mailed by Plaintiff's counsel to the New York address, was signed in Seattle on January 9, 2002 by "A. Dollahite," who was then a receptionist at Defendant's Seattle office. *See* Ahern Aff. ¶ 6; Transcript at 20.

Plaintiff offers nothing to counter Defendant's assertions. Under these circumstances, Defendant, through no fault of its own, never received the initially mailed summons and complaint and thus should not be held responsible for a third party's failure to effect service. *See, e.g., Pastor v. Advision, Inc.,* 1996 WL 721996 (W.D.N.Y.1996) (finding that defendant, who never received service of process, was not responsible for failure of service where (a) the law firm designated to receive the service of process was defunct, (b) the defendant's own address did not receive mail deliveries, and (c) there was no evidence that the defendant knew about the suit in the relevant time frame). There is also no evidence that Defendant learned of the litigation in any other manner before it received the second mailing of the summons and complaint on January 9, 2002.

Thus, Defendant did not allow its forwarding order to expire and hence was not responsible for what can only be characterized as a clerical error by the Postal Service.

**B. Dereliction with Respect to Statutory Obligations**

■ Plaintiff argues that Defendant may also be equitably estopped from arguing that removal was timely because it failed to deliver and file with the New York Department of State essential documents in violation of the Business Corporation Law. Plaintiff argues that even if Defendant were not derelict in filing the proper forwarding order with the Postal Service, the Defendant would have received the summons and complaint on November 11, 2001 or soon thereafter had it filed the proper documents with the Secretary of State.

We agree with the proposition that if Defendant's failure to meet a statutory obligation prevented Defendant from receiving service of process through the Secretary of State's November 11, 2001 mailing, then Defendant may be estopped from arguing that its notice of removal was timely. The only federal case dealing with a similar issue is *Sostre v. Century Products,* 1998 WL 765173 (S.D.N.Y.1998). In *Sostre,* the plaintiff attempted to serve the defendant Century Products under N.Y. Bus. Corp. Law § 306 as an "authorized foreign corporation." *Id.* The plaintiff contended that the notice of removal was filed more than 30 days after the initial service of process and was therefore untimely. Defendant answered that "the initial service was invalid because Century Products

---

**3.** The Defendant continues to pay rent for empty office space at the New York address.

*See* Ahern Aff. ¶ 4.

is an unauthorized foreign corporation that cannot be served under § 306, and that, accordingly, defendant's notice of removal was timely since it should be measured from the valid service of process [that occurred at a later date]." *Id.* The Court found that Bus. Corp. Law § 1301 did not require defendant to register in New York State; thus, because plaintiffs failed to show that defendant was "in violation of an obligation to seek authorization from the Secretary of State," notice of removal was timely. The negative implication of *Sostre* is that if a plaintiff complies with the laws regarding service of process, a defendant corporation's violation of a legal obligation that prevented it from receiving service of process may result in a finding that service of process was received at the time plaintiff first attempted service.[4] *See also In re Martin–Trigona,* 763 F.2d 503, 505 (2d Cir.1985) ("[Defendants'] failure either to collect corporate mail sent to the Ridge Road address or to change the address for service with the Secretary of State constitutes a willful disregard of legal process and a willful default."). We also think this rule would create an appropriate incentive for parties to maintain accurate service of process addresses with the Secretary of State.[5]

In this case, Plaintiff seeks to demonstrate that Defendant is in violation of various provisions of the New York Business Corporation Law. If Defendant were in violation of one such provision, and such violation prevented Defendant from actually receiving the November 11, 2001 service, then the timeliness of the notice of removal would be highly questionable and remand likely.

### 1. § 408 Violation

First, Plaintiff argues that Defendant is in violation of Bus. Corp. Law § 408, which states in relevant part:

---

**4.** Defendant correctly notes that the Court in *Sostre* did not explicitly state that a violation of the statutory obligation would have resulted in a finding that service of process was timely. However, this conclusion is a logical result of that Court's analysis, and would appear to be consistent with the notice requirements of due process. *See also Baker v. Latham Sparrowbush Assoc.,* 72 F.3d 246, 254 (2d Cir.1995) ("[f]or parties to be bound by the results of a proceeding, due process requires 'notice reasonably calculated, under the circumstances, to apprise [them] of the pendency of the action and afford them the opportunity to present their objections.'") (citations omitted).

It should also be noted that Defendant and Plaintiff cite a number of New York State cases dealing with the issue of updating an address for service of process purposes. The holdings of these cases are in some conflict, *see, e.g., Squire v. Greenberg,* 173 A.D.2d 362, 569 N.Y.S.2d 730 (N.Y.App.Div.1991) (cited by Plaintiff for proposition that a motor vehicle licensee involved in a car accident who willfully misrepresented his correct address in violation of the New York traffic laws was estopped from claiming ineffective service of

process); *Di Lorenzo, Inc. v. A.C. Dutton Lumber Co.,* 67 N.Y.2d 138, 142, 501 N.Y.S.2d 8, 492 N.E.2d 116 (1986) (cited by Defendant for proposition that "corporate defendants served under § 306 have frequently obtained relief from default judgments where they had a wrong address on file with the Secretary of State, and consequently, did not receive actual notice of the action in time to defend"), and both parties concede that federal law should be applied in the context of removal.

Moreover, the state law cases relied on by Defendant involve vacating default judgments when the reason for default was the corporation's failure to update its address with the Secretary of State. *See, e.g., Di Lorenzo, Inc.,* 67 N.Y.2d at 142, 501 N.Y.S.2d 8, 492 N.E.2d 116. Even if these state court holdings were binding authority, we simply note the potentially relevant distinction between the consequences of a decision to remand and the much harsher consequences of a decision to uphold a default judgment.

**5.** As will be discussed herein, we also find it permissible for a corporation to leave a forwarding address at its service of process address.

1. Each domestic corporation, and each foreign corporation authorized to do business in this state, shall, during the applicable filing period as determined by subdivision three of this section, file a statement setting forth:

(a) The name and business address of its chief executive officer.

(b) The street address of its principal executive officer.

(c) *The post office address within or without this state to which the secretary of state shall mail a copy of any process against it served upon him or her. Such address shall supersede any previous address on file with the department of state for this purpose.*

. . .

3. For the purpose of this section the applicable filing period for a corporation shall be the calendar month during which its original certificate of incorporation or application for authority were filed or the effective date thereof if stated. The applicable filing period shall only occur: (a) annually, during the period starting on April 1, 1992 and ending on March 31, 1994; and (b) *biennially, during a period starting on April 1 and ending on March 31 thereafter . . . .*

Bus. Corp. Law § 408 (emphasis added).

Plaintiff argues that several documents on file with the Secretary of State support the claim that Defendant was in violation of this statute. On October 9, 1997, J.P.L. Associates, the predecessor in name to Giftcerticates, filed an Application for Authority in New York State. *See* Diamond Aff., Ex. E. Thus, pursuant to § 408, Defendant had to file its biennial statement in October 1999, or March 31, 2000 at the latest. In fact, there is a biennial statement dated October 1999 on file with the Secretary of State which changes the service of process address to "J.P.L. Associates, Inc. DBA Giftcertificates.com., 470 Seventh Avenue, 6th Floor, New York, N.Y. 10018." *Id.* The only document that post-dates this biennial statement is a December 1999 filing that changes the name of "J.P.L. Associates, Inc." to "Giftcertificates.com, Inc." *Id.*

 Citing this statute, Plaintiff argues that Defendant failed to change its service of process address with the Secretary of State when the New York address was no longer in use, and the failure to change such service of process address violated the filing requirements of § 408. *See* Plaintiff's Memo 9—12. If Defendant failed to update its service of process address with the Secretary of State *and* posted no forwarding order with the Postal Service, we might be inclined to agree with Plaintiff. However, we find that there is no violation of § 408 where the service of process address listed with the Secretary of State has a forwarding order on file with the Postal Service. The language of § 408 does not require that the corporation actually exist at its service of process address, but does require that provisions be made for any mail sent to the service of process address to reach the corporation. Neither § 408, nor any cases we have found, would prevent a corporation from having its mail forwarded from its service of process address. In this case, as has been discussed, all the evidence suggests that the Defendant should have received the November 11, 2001 mailing in its Seattle office but did not because of some error on the part of the Postal Service.

### 2. *§ 306–A Violation*

Plaintiff also asserts that Defendant violated the provisions of Bus. Corp. Law § 306–A. Sec. 306–A permits a party whose address has been supplied by a domestic or authorized foreign corporation as its address for process to "resign" or cease being used for such purposes. *Id.*

The resignation of receipt of process must set forth, in part:

(4) That the designating corporation is required to deliver to the department of state a certificate of amendment or change providing for the designation by the corporation of a new address and that upon its failure to file such certificate, its authority to do business in this state shall be suspended, unless the corporation has previously filed a biennial statement under section four hundred eight of this chapter, in which case the address of the principal executive office stated in the last filed biennial statement shall constitute the new address for process of the corporation, and no such certificate of amendment or change need be filed.

Bus. Corp. Law § 306–A. Plaintiff argues that if Defendant failed to change the party who may receive service of process on Defendant's behalf by filing with the Secretary of State, and did in fact change the party who may receive service of process, then it is arguably in violation of § 306–A. Bus. Corp. Law § 306–A.

However, there are two problems with Plaintiff's reliance on this statute. First, this statute is intended for situations where a corporation is designating an agent for service of process. In this case, Defendant never designated any other party or legal representative to serve as its agent for service of process purposes. The New York address was not the address of Defendant's agent; rather, it was Defendant's former address prior to moving to Seattle. Second, even if § 306–A were applicable, the default clause beginning with "unless" permits the corporation to have service of process delivered to the address of its previously filed biennial statement. Defendant would be in violation of this statute only if it changed its agent for service of process, failed to file such change with the department of state, and failed to file a biennial statement with a service of process address. At the very least, Defendant did not violate the statute because it had a service of process address on file with the Secretary of State in its October 1999 biennial statement. *See* Diamond Aff., Ex. D.

### 3. § 1310 Violation

The third possible violation of a statutory obligation involves Bus. Corp. Law § 1310. Defendant argues that it did not commit any violation in this case because Giftcertificates ceased "doing business" in New York State on June 30, 2001 as defined by Bus. Corp. Law § 1301.[6] Because it ceased doing business, Defendant argues that it was not required to comply with § 408 or § 306–A of the Bus. Corp. Law. However, as Plaintiff argues, Defendant never surrendered authority to do business in New York State pursuant to § 1310. Bus. Corp. Law § 1310. Thus, Plaintiff argues that (a) Defendant is subject to the provisions of § 408 and § 306–A, and (b) if Defendant ceased doing busi-

---

**6.** The relevant provision states:

(b) . . . a foreign corporation shall not be considered to be doing business in this state, for the purposes of this chapter, by reason of carrying on in this state any one or more of the following activities:

(1) Maintaining or defending any action or proceeding, whether judicial, administrative, arbitrative or otherwise, or effecting settlement thereof or the settlement of claims or disputes.

(2) Holding meetings of its directors or its shareholders.

(3) Maintaining bank accounts.

(4) Maintaining offices or agencies only for the transfer, exchange and registration of its securities, or appointing and maintaining trustees or depositories with relation to its securities.

Bus. Corp. Law § 1301.

ness in New York and did not file with the Secretary of State, it violated the surrender of authority provision of § 1310—a violation that would have resulted in a failure of successful service of process of the November 11, 2001 mailing by the Secretary of State.[7]

If Defendant officially surrendered authority to do business in New York State, it would have filed with the Secretary of State a statement setting forth:

(5) That it revokes the authority of its registered agent, if any, previously designated and consents that process against it in any action or special proceeding based upon any liability or obligation incurred by it within this state before the filing of the certificate of surrender may be served on the secretary of state after the filing thereof in the manner set forth in paragraph (b) of section 306 (Service of process).

(6) A post office address within or without this state to which the secretary of state shall mail a copy of any process against it served upon him.

Bus. Corp. Law § 1310.

Thus, Plaintiff argues that if Defendant did in fact surrender authority to do business in New York, the Secretary of State nonetheless should have Defendant's updated service of process address on file.

However, we need not reach this issue. We already have decided that Defendant did not violate § 408 and § 306–A, so Defendant need not argue that it was not subject to the Bus. Corp. Law. Plaintiff also cannot show that, assuming Defendant violated § 1310, such violation resulted in a failure of receipt of service of process. As already noted, the Secretary of State had a

service of process address for Defendant, and the Postal Service should have forwarded that mailing to the Seattle office. Thus, under this approach, whether Defendant properly filed a § 1310 surrender of authority is irrelevant to the question of whether Defendant was responsible for non-receipt of the summons and complaint since we have already stated that the reason for such non-receipt was a Postal Service error.

## C. Constructive Receipt of Summons and Complaint

 Plaintiff also argues that Defendant had constructive receipt of the summons and complaint on November 11, 2001. Constructive receipt of an initial pleading by a defendant exists in limited circumstances where a corporation designates a third party to serve as an agent upon which process is to be served. *See Recyclers Consulting Group, Inc. v. IBM–Japan, Ltd.,* 1997 WL 615014 *2—3 (S.D.N.Y.1997). In *Recyclers,* the defendant corporation, in a contract with plaintiff corporation, designated an agent to receive its pleadings. Plaintiff served the summons and complaint on that agent, but the agent did not forward the papers to the defendant and instead returned the papers to plaintiff. *Id.* at *2. The court found that because defendant "cloaked [its agent] with apparent authority to accept service on its behalf," service of the agent started the 30–day removal limitations period. *Id.* at *3. Plaintiff argues that the facts in this case are similar except that Defendant "designated *itself* and not an *agent* for service of process." Plaintiff's Memo 7. We disagree.

---

**7.** At oral argument, Defendant chose not to pursue the issue of whether service of process on the Secretary of State was proper after Defendant left New York. *See* Transcript at 19. Thus, whatever the consequences of a failure to comply with § 1310 may or may not be with respect to a foreign corporation being subject to suit in New York, it has no significance here where Defendant is not challenging its amenability to service in the state but only the date upon which it was served.

In *Recyclers*, a critical fact was that a third party actually received the summons and complaint but for whatever reason failed to forward the service of process to the defendant.[8] *Id.* at 3. If the third party receives the service of process on behalf of defendant, or receives the service and then returns or rejects the service, service is nonetheless effected. *Id.* In this case, there are no facts to suggest that anyone actually received the November 11, 2001 service of process at Defendant's address at 470 7th Avenue. The Department of State's own records show that the service was returned by the Postal Service with the notation "Forwarding Order Expired." Diamond Aff., Ex. C. Thus, *Recyclers* is inapposite to this case, and we decline to apply the constructive receipt analysis to cases where no agent or employee of the corporation actually received a summons and complaint.

**Conclusion**

In summary, we find that (a) Defendant was not derelict in having its mail forwarded to its Seattle office, nor is there any suggestion that Defendant allowed the forwarding order to expire, (b) Defendant did not violate any statutory obligation pursuant to the Business Corporation Law that directly resulted in its non-receipt of the November 11, 2001 service of process, and (c) Defendant cannot be deemed to have received the service of process through a theory of constructive receipt. For these reasons, we deny Plaintiff's motion to remand.

The Court will hold a preliminary conference to take up scheduling and other matters on April 25, 2002 at 10:00 a.m. SO ORDERED.

---

8. The Plaintiff also cites *Mermelstein v. Maki* for the proposition that receipt occurs "[i]f delivery of the initial pleading is made in a manner which, objectively viewed, is calculated to give fair notice to the defendant ...." 830 F.Supp. 180, 183 (S.D.N.Y.1993). However, Defendant leaves out the last clause of the sentence: "If delivery of the initial pleading is made in a manner which, objectively viewed, is calculated to give fair notice to the defendant *the receipt is sufficient to trigger the statutory removal period." Id.* This holding in *Mermelstein* is applied in cases where an employee of a corporation, whose duty it is to receive mail, signs for a summons and complaint. This case is not applicable to the case at bar because no one from Defendant's corporation signed for the November 11, 2001 service of process. Thus, here, unlike *Mermelstein,* the delay in receipt was not the result of a failure on Defendant's part.